UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
-----------------------------X
IN RE:                       :
PAMIDRONATE PRODUCTS         :
LIABILITY LITIGATION         :
                             :   09-MD-2120(KAM)(SMG)
                             :
                             :   December 16, 2010
                             :
                             :   Brooklyn, New York
                             :
                             :
                             :
                             :
-----------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
BEFORE THE HONORABLE STEVEN M. GOLD
UNITED STATES CHIEF MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:        JOHN JULIEN VECCHIONE, ESQ.
                           DANIEL ADAM OSBORN, ESQ.
                           ROBERT G. GERMANY, ESQ.


For the Defendants:        JAMES W. HUSTON, ESQ.
                           ERIN BOSMAN, ESQ.
                           CHRISTINA L. GAARDER, ESQ.
                           THEODORE M. LIS, ESQ.
                           NILDA M. TULLA-ISIDRO, ESQ.
                           JENIFER N. KEENAN, ESQ.


Audio Operator:


Court Transcriber:         ARIA TRANSCRIPTIONS
                           c/o Elizabeth Barron
                           375 Salt Point Turnpike, #5D
                           Poughkeepsie, NY 12603
                           (215) 767-7700


Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE CLERK:  Hello, everybody.  This should be In

2    Re:  Pamidronate Products Liability Litigation, 09-MD-2120.

3          Who will be speaking on behalf of the plaintiffs?

4          MR. VECCHIONE:  John Vecchione for the

5    plaintiffs.

6          MR. OSBORN:  And Daniel Osborn for the

7    plaintiffs.

8          MR. GERMANY:  Bob Germany for the plaintiffs.

9          THE COURT:  Vecchione, Osborn, and Germany?

10         MR. GERMANY:  Yes, sir.

11         THE COURT:  Good morning.

12         MR. VECCHIONE:  Good morning, Judge.

13         MR. GERMANY:  Good morning.

14         THE COURT:  And who is on for the defendants?

15         MR. HUSTON:  Jim Huston and Erin Bosman for APP

16   Pharmaceuticals, your Honor.  You're very faint.  Everybody

17   else is pretty loud, but you're pretty faint.

18         THE COURT:  Is this better?

19         MR. HUSTON:  Yes, much.  Yes.

20         THE COURT:  Okay.  I have to literally lean into

21   the microphone here.  We are on the record.

22         Could you announce your appearance again.  I'm

23   sorry.

24         MR. HUSTON:  Yes, sir.  Jim Huston and Erin

25   Bosman for APP Pharmaceuticals.

1          THE COURT:  Thank you.  Who else will be

2   addressing the Court this morning?

3          All right then.  I have Mr. Huston's letter of

4   December 13 and Mr. Vecchione's letter of December 13.

5          Is there anything else that I should have before

6   me?

7          MR. HUSTON:  I don't think so, Judge.

8          THE COURT:  Okay.  I am going to confess that I

9   probably need a little more help having my recollection

10  refreshed than I ought to, but I am sure that I can count

11  on you to be of assistance in the generous spirit of the

12  holidays.

13         First of all, I see that -- let's start with the

14  small stuff.  Let's look at paragraph 5 of Mr. Huston's

15  letter.  In taking the second matter first, I see that

16  there are two plaintiffs who have decided not to pursue

17  their claims.

18         Have those plaintiffs filed stipulations

19  discontinuing them yet?  Who represents them?

20         MR. OSBORN:  Your Honor, no, for a couple of

21  reasons:  One is we have not had a practice so far -- I'm

22  sorry.  This is Dan Osborn for the plaintiffs.

23         We have not to this date or to this point in time

24  had a practice of filing individual stipulations.  We've

25  sort of had one go around of a stipulation that included

1    some number of plaintiffs and we had one amended complaint.

2    We haven't been in the practice of filing individual

3    stipulations.  We can, except by January 7 we will have

4    been required to file yet another amended complaint, and

5    that's going to weed some more people out.

6          With respect to these two in particular, Wallace

7    was never named in either of the complaints.  Wilma Melon

8    (ph.) was in the first complaint, but when we amended she

9    came out; so she's automatically been removed to dismiss by

10   virtue of our amendment.  So we've not filed stipulations.

11   We can do that going forward for individuals, but, again,

12   we're going to end up in a situation where some large

13   number of people will probably stipulate to dismissal and

14   we've got another amended complaint to file by January 7.

15         THE COURT:  Well, all right.  Then let's step

16   back and go to paragraph 2, and this is really where I need

17   your help.

18         I do remember some discussion about filing of

19   complaints on an individual basis, so that when it was time

20   for cases to be returned to the transferee courts, we could

21   do it on an approximately plaintiff-by-plaintiff basis.

22         Am I mis-recalling that?

23         MR. OSBORN:  Your Honor, again, this is Dan

24   Osborn.

25         I think we've had at various conferences there's

1   been some discussion about venue; there's been discussion

2   about direct filing; there's been discussion about

3   remand --

4            THE COURT:  Right.

5            MR. OSBORN:  -- through Mr. Miller from my office

6   was at the last conference, and I believe this issue was

7   raised.

8            My view at this point is this is somewhat

9   premature and sort of a make-work exercise.  If the cases

10  were to just proceed on the normal course and the MDL --

11  you concluded at some point that the MDL had served its

12  purpose and you asked the panel for a suggestion of remand

13  -- if that were granted, then these cases would then be set

14  back to the transferor court.

15           In this case, I think the defendants are

16  suggesting that that's not necessarily a very viable option

17  because there's been so much direct filing in the Eastern

18  District.  The cases would be returned to the Easter

19  District, even if they don't belong there ultimately.  I

20  don't know that we need to deal with that issue today or

21  even in the next month.  At least, that's my view from the

22  plaintiffs' side.  And, frankly, I think probably when we

23  get to the end of this, the plaintiffs will stipulate to

24  transfer to the appropriate venue.

25           So what the defendants, I think, are asking us to

```
 1   do now is move to severe, file individual complaints in

 2   some number of district courts throughout the country.

 3   Once those cases are filed, file the appropriate paperwork

 4   with the judicial panel advising them that there's an MDL.

 5   These cases will then be transferred back to your Honor

 6   where they are now.  And then at the end of the MDL, if

 7   your Honor asks for a suggestion of remand, then the cases

 8   could be transferred back to the venue where they were

 9   filed.  That just seems like a lot of work that we don't

10   need to do right now and in any event I suspect that the

11   plaintiffs will ultimately stipulate to transfer those

12   cases back to the appropriate venue.  That's been done in a

13   couple of other cases already in a couple of other MDL's,

14   particularly in the Fosamax Litigation before Judge Keenan.

15           THE COURT:  Well, let me ask you this,

16   Mr. Osborn, before I turn the floor to the other plaintiffs

17   first and then the defendant:

18           What is your vision of how this case progresses

19   as an MDL and what procedural steps and discovery steps and

20   motion practice should occur while it's before this Court

21   before it spins out?

22           MR. OSBORN:  Well, I think --

23           THE COURT:  Did I inartfully frame the question

24   or are you struggling to come up with what you think the

25   right answer is?
```

1          MR. OSBORN:  No.  I'm -- it's -- I think you've

2     asked me to describe what I expect to happen over the next

3     6 months, 12 months, 18 months, 2 years.

4          THE COURT:  Well, what do you see as the purpose

5     of the MDL?  What is the juncture at which this Court ought

6     to be saying remand back to the other courts or stipulate

7     to transfer to the other courts because we're done here.

8          What's the last event or what is the course of

9     events, generally speaking, as an arc that you see

10    happening in the Eastern District of New York under the MDL

11    jurisdiction?

12         MR. OSBORN:  I think there would be some limited

13    discovery of individual plaintiffs.  There would be broad

14    discovery of the defendants, so that the discovery of the

15    defendants doesn't have to happen in individual cases once

16    they're remanded.  And once there's some limited discovery

17    of the plaintiffs and the broad discovery of the defendants

18    and there's some <u>Bellwether</u> trials that would occur before

19    your Honor or in the Eastern District, and then ultimately

20    all of the cases would be remanded after the trial of some

21    number of <u>Bellwether</u> cases.

22         THE COURT:  Well, let's assume that ultimately we

23    defer all of what you describe as unnecessarily premature

24    paperwork for now, can we at least expect from plaintiffs

25    an agreement as to the appropriate court where any

1   individual trials should be held and a stipulation to that

2   effect at this point?

3          MR. OSBORN:  On behalf of my clients I would,

4   your Honor.  I don't mean to speak for Mr. Vecchione or

5   Mr. Germany at this point in time, but we would be prepared

6   to stipulate to the transfer to the appropriate district

7   court for trial, yes.

8          THE COURT:  Mr. Vecchione, is there anything you

9   want to add to this?

10          MR. VECCHIONE:  Your Honor, I've already severed

11   my client into different ones.  I expect that on January 7

12   I will file individual complaints in all of those.  I

13   believe that the trial is -- there are only two places

14   usually where the plaintiffs resides or where they took the

15   drug, and I am certainly willing to say where that should

16   be.  I think I usually put it in by what law applies, but I

17   have no problem with that.

18          THE COURT:  Mr. Germany?

19          MR. GERMANY:  I agree with Mr. Vecchione, Judge.

20          THE COURT:  Mr. Huston, what's your take on all

21   of this?  Is there any reason not to defer it? You

22   anticipate getting these things dismissed, don't you?

23          MR. HUSTON:  I think there will be some

24   dismissals and we can talk about the process of that,

25   your Honor.  I am optimistic and pleased that they have

1    said this because I think that we can come to a conclusion

2    on which local district court is the proper venue for each

3    of these cases, and we probably have got to start compiling

4    such a list.  I do agree that there's no need at this point

5    to try and get them sent back there and then brought back

6    to the Eastern District.  I think we can do that after the

7    pleadings have gone through.  We will have motions, both on

8    the Iqbal and Twombly type of pleading issues, as well as

9    the statute of limitations and the others, but we do that

10   in one or two pleading stages we can discuss.  But I think

11   that we can, based on the plaintiffs' representations, come

12   to an agreement that after the MDL these can be sent back

13   to an appropriate jurisdiction, and we will designate those

14   jurisdictions and the Court can sign such an order.

15           THE COURT:  Okay.  How long will it take for the

16   plaintiffs to identify which plaintiffs belongs in which

17   court and draft something --

18           MR. VECCHIONE:  I'll start, your Honor.  It's

19   John Vecchione again.

20           As I said, my view of this is that I have a

21   deadline to file my complaints.  I'm in the process of

22   doing that, and it will be clear from my complaints, but

23   I'm also happy to send a letter out saying I filed my

24   complaints and here's where I think these belong, on that

25   date as well.

1          THE COURT:  If you get such a letter by January 7

2   from each plaintiff's counsel, is that going to satisfy

3   you, Mr. Huston?

4          MR. HUSTON:  Yes, certainly.

5          THE COURT:  All right.

6          MR. HUSTON:  If it could also just be put in the

7   amended complaint to be clear what jurisdiction is the

8   ultimate proper jurisdiction, but a simultaneous letter or

9   a listing would be equally adequate.

10         THE COURT:  So, Mr. Osborn, you'll comply with

11  that as well?

12         MR. OSBORN:  Certainly, if that's your order,

13  your Honor.  I'm just thinking that by the seventh, I guess

14  we'll know which plaintiffs are definitively proceeding

15  anyway.  And as Mr. Huston has indicated, that will be

16  reflected in the document and we can just supplement that

17  with a letter, I suppose, so that's fine.

18         THE COURT:  Right.  And, frankly, I agree with

19  Mr. Huston's suggestion.  If it's alleged in the complaint

20  where the appropriate venue is for each plaintiff, then I

21  think Mr. Huston's concern is satisfied, right, Mr. Huston?

22         MR. HUSTON:  Yes, sir.

23         THE COURT:  Okay.  So if you allege it in the

24  complaint, then I don't think a separate stipulation is

25  necessary, but if you don't allege it in the complaint, and

1    I don't see why you wouldn't, then I suppose we'll have to

2    have some other vehicle for specifying and a list or letter

3    accompanying the amended pleading seems like an appropriate

4    way to address that.

5              MR. HUSTON:  Right.

6              THE COURT:  Does that deal with your venue

7    paragraph, Mr. Huston, or have I left something out?

8              MR. HUSTON:  Yes, sir.  No, I think that does.

9              THE COURT:  Okay.

10             MR. VECCHIONE:  There's one other aspect of the

11   venue paragraph that I hate to -- now that we've reached

12   such a wonderful accord, I hate to bring it up, but I just

13   want to make clear.

14             THE COURT:  Excuse me.  I'm sorry to interrupt

15   you, but I don't recognize your voices.  I apologize.

16             MR. VECCHIONE:  John Vecchione, again.

17             THE COURT:  Thank you, Mr. Vecchione.

18             MR. VECCHIONE:  John Vecchione, again.

19             I have a new complaint to file and I take it

20   because there's been no agreement that I should file that

21   complaint, there's not going to be any direct filing in

22   this MDL or at least not without objection and a fight; is

23   that what I understand, Mr. Huston?

24             MR. HUSTON:  No.  I think as long as we know

25   where they're going ultimately and we agree on the

 1  appropriate jurisdiction and the Courts can order them, I

 2  see no problem with it.

 3         MR. VECCHIONE:  All right.

 4         MR. HUSTON:  Other defendants may disagree, but

 5  that's, I think, the streamlined way of doing it, frankly.

 6         MR. VECCHIONE:  All right.  I will attempt to

 7  file it in the -- it's the Texas v. APP, so I'll just give

 8  you a preview, and I will put that in also by January 7 and

 9  we'll see who salutes and who opposes.

10         MR. HUSTON:  Okay.

11         THE COURT:  Are there any other defendants on the

12  line who object?  Apparently, not.

13         MS. GAARDER:  Hospira does not object.  This is

14  Christina Gaarder for Hospira.

15         THE COURT:  Thank you.

16         MR. LIS:  Ted Lis on the line from Hollingsworth

17  LLP for Sandoz.  I have no objection, your Honor.

18         THE COURT:  Okay, great.

19         MS. TULLA:  Nilda Tulla from Goodwin Proctor for

20  Teva Parenteral Medicines.  No objection.

21         MS. KEENAN:  And Jenifer Keenan of Alston & Bird

22  for Bedford Laboratories.  No objection.

23         THE COURT:  Okay, great.  This is so easy I want

24  to do it all day long.

25         Are we now finished with paragraph 2 to

1    everyone's satisfaction?

2              All right.

3              Paragraph 3, the deadline is January 7.  I infer

4    from the conversation we've had so far that all the

5    plaintiffs intend to meet it.

6              MR. OSBORN:  Yes, your Honor.  This is Dan

7    Osborn.

8              THE COURT:  And the defendants, to the extent

9    they believe that the complaints are subject to Rule 12

10   dismissal, intend to seek a pre-motion conference by

11   application to Judge Matsumoto by January 21; is that

12   right?

13             MR. HUSTON:  Yes, your Honor.

14             THE COURT:  All right.  So that's in place and

15   there's no debate about it.

16             Number four, it looks like that's proceeding

17   without any requirement for court intervention at this

18   juncture.

19             Does anybody disagree?

20             MR. OSBORN:  Your Honor, Dan Osborn.

21             I think we are awaiting some proposal or

22   submission from the defendants, and I guess they've

23   indicated that in their gender letter, so we're just

24   standing by.

25             THE COURT:  Okay.  Number five is authorizations.

1          Why are we still dealing with this, I guess, is

2    my question?

3          Mr. Vecchione, have you provided undated

4    authorizations for all plaintiffs on behalf of whom you've

5    sued?

6          MR. VECCHIONE:  I believe I have, but if they are

7    dated, I will correct that.  I might have had them in the

8    pipeline or people just follow what we've done before, but

9    I will provide them undated, if they're not.

10          As I understand it from a letter I received last

11    week, I have three authorizations that were not provided

12    that the defendants have a problem with for three of my

13    clients.  I have checked.  One of the clients died

14    unbeknownst to me.  Two, I am either going to substitute

15    and provide authorizations by the substituted party or I'm

16    going to dismiss them, and that's the three authorizations

17    that I know that the defendants have a problem with.  I

18    have just contacted the next of kin last week, but that's

19    the only authorization problem I know of.  I am happy if

20    there are others to address them from my clients.

21          THE COURT:  Mr. Vecchione, how soon can you

22    provide these additional authorizations or state that the

23    claims will not be pursued?

24          MR. VECCHIONE:  Well, I expect to do all of that

25    by January 7.

1              THE COURT:  Mr. Osborn?

2              MR. OSBORN:  I think, your Honor, we are too

3    short, Rose and Chandler, and I think the problem we had

4    with Chandler was our fault and that was Chandler was not

5    in the Bartoli complaint that we filed on behalf of some

6    hundred and fifty or so folks.  So that one sort of escaped

7    us because we were dealing with a group that was in the

8    complaint that we filed as part of the MDL.  So we're

9    trying to get Chandler.  I think we'll have those

10   relatively quickly.  The other is Sylvia Rose.

11             Occasionally, your Honor, you run into a client

12   who says they'll get you things and they just don't.  I

13   have a feeling that we will ultimately be dismissing her

14   case.  And, frankly, if you would give us until the

15   seventh, too, I think that might be a reasonable date to

16   allow that process to sort of run its course.

17             THE COURT:  Mr. Germany?

18             MR. GERMANY:  Judge, as I sit here I'm not aware

19   that I owe anyone anything, but if somebody on this call

20   says otherwise, we'll be happy to take care of it no later

21   than the seventh.

22             THE COURT:  Mr. Huston, is there anything you

23   want to add?

24             MR. HUSTON:  No, sir.  I think that's fine.  I do

25   believe that, especially with the Court's indication at the

1    last conference that you wanted them to keep undated and

2    signed authorizations in sort of a database that they could

3    forward us after ten days of notice, that's the other thing

4    that I would like to -- and I know that they're on it, so I

5    think we're making good progress.

6              MS. TULLA:  Your Honor, this is Nilda Tulla.

7              THE COURT:  Yes.

8              MS. TULLA:  I would like to address Mr. Germany's

9    comment.  I believe we're still missing authorizations for

10   plaintiffs Brooks, Kahn, Lockard, Pace, Ben Smith or June

11   Peterson.

12             MR. GERMANY:  Okay.  Do you have a form you want

13   to email to me?

14             MS. TULLA:  I believe it's the form that all of

15   the other plaintiffs have been using.  I can try to track

16   that down and send that to you.

17             MR. GERMANY:  John, can you send that to me?

18             MR. VECCHIONE:  I can indeed.

19             MR. GERMANY:  We'll take care of that.  We'll get

20   them out tomorrow.

21             THE COURT:  All right.  So the Court invites a

22   motion to dismiss to failure to prosecute and violation of

23   this Court's discovery order for any plaintiff who has not

24   provided an undated authorization by January 7, 2011, all

25   right.

1          MR. OSBORN:  Your Honor, sorry.  I feel like --

2     Mr. Vecchione, I think everybody is in agreement on this.

3     I hate to be the center, but --

4          THE COURT:  Who is speaking right now?  Is that

5     Mr. Huston?

6          MR. OSBORN:  I'm sorry.  It's Dan Osborn.

7          THE COURT:  Oh, I'm sorry, Mr. Osborn.  Go ahead.

8          MR. OSBORN:  I know, from my conversation with

9     Mr. Miller after the last conference, there was some

10    discussion about undated authorizations.  And I don't feel

11    comfortable providing to -- and I'm not sure why they need

12    it -- providing to the defendants an undated authorization.

13         THE COURT:  Why?  What's discomforting about it?

14         MR. OSBORN:  Well, because these authorizations

15    are generally good for many, many months, and the whole

16    idea is for the defendants to be able to go out and collect

17    the records from our folks, and we have no problem with

18    doing that, that's part of the process.  But an undated

19    authorization sits in their hands and I don't know why they

20    would need an undated authorization unless --

21         THE COURT:  But what happens when it takes them

22    sixty days to get the records back from the first provider

23    and then it's a second provider that's noted in those

24    records that they want to serve?  Do they need a new

25    authorization or can they serve the undated authorization

1  you've already given them?

2              MR. HUSTON:  They would need a new authorization,

3  your Honor, because they'd have to specify a new physician.

4              THE COURT:  So these authorizations are provider

5  specific?

6              MR. HUSTON:  Yes.

7              THE COURT:  And how long do they last by

8  operation of law?

9              MR. HUSTON:  I don't know by operation of law,

10  but as we've handled this, the other MDL's, you know we

11  don't really run into any problems until probably after six

12  months or so.

13             THE COURT:  Well, obviously, some difficulty is

14  what provoked this.  I don't remember the discussion of it

15  in detail.  Mr. Huston, can you refresh me?

16             MS. GAARDER:  Your Honor, this is Christina

17  Gaarder, and I'm the one who first brought this up.

18             THE COURT:  Okay.

19             MS. GAARDER:  We represent Merk in the Fosamax

20  Litigation, and this is a routine problem in the Fosamax

21  Litigation where we have -- and in that litigation they

22  provide blank authorizations, not provider specific --

23             THE COURT:  Right.

24             MS. GAARDER:  -- which I had thought was the case

25  in this litigation as well:  We were supposed to get blank,

1   undated authorizations.

2           The plaintiff then, when they fill out the

3   plaintiff profile forms, which we haven't even settled on

4   yet, that allows the defendant to send the authorization

5   out to any provider that's listed in the plaintiff profile

6   form, collect those records.  We often find that the

7   disclosure of physicians, not intentionally I assume, is

8   not complete.  You know, there's other providers listed in

9   the first wave of collections.  We have to re-send out

10  authorizations.  Six months is a pretty good ballpark for

11  how long they're honored, some are less, some are more.

12  But we find ourselves in a continual process of getting --

13  and in the MDL and Fosamax, this problem wasn't sort of

14  foreseen.  So we end up having to get new authorizations on

15  a regular basis.

16          THE COURT:  Yes.  That's been a pretty common

17  experience of mine as well.

18          Let me as you this, Mr. Osborn:  Assuming that

19  the defendants were to give you notice every time they

20  served an authorization, what's the prejudice?

21          MR. OSBORN:  Your Honor, I can't give them cart

22  blanche to go collect records from every doctor that our

23  client has ever seen.  It's got to be related to the case.

24  I would have no control over that.  Especially, and what

25  would really concern me, is mental health records,

1    your Honor.

2         THE COURT:  Don't they have claims for pain and

3    suffering?

4         MR. OSBORN:  Yes, but they don't -- if they want

5    to get psychiatric records because --

6         THE COURT:  So if they're seeing a therapist it's

7    going to be discoverable anyway.

8         MR. OSBORN:  Not necessarily, your Honor, not at

9    all.  If our client is not making a claim for psychological

10   injury by virtue of the suit, they're not entitled to those

11   records.

12        THE COURT:  Which ones --

13        MS. GAARDER:  In the Fosamax Litigation -- and

14   this is Christina Gaarder again -- there is a requirement

15   in the authorization that's signed by the plaintiff itself

16   that we provide notice for the collection of psychological

17   records.  That's not true of just plain old medical records

18   going to the -- you know, your doctor, to the hospital for

19   your broken leg.

20        THE COURT:  Look --

21        MS. GAARDER:  Whatever.  But for psychiatric

22   records, that is a requirement and we, obviously, comply

23   with that.

24        THE COURT:  I want this to move quickly and

25   easily.  I am willing to allow you to work out some

1    limitation on the scope and prior notice with respect to

2    the service of the authorizations, but I think it's

3    appropriate to have undated authorizations with this many

4    plaintiffs spread over this many states and it having taken

5    this much time to get authorizations to the defendants that

6    they can use.

7              So you will provide undated authorizations.  You

8    will work through a stipulation or agreement by letter as

9    to the scope of the authorizations that may be served

10   without application to the Court and prior notice of the

11   service of the authorizations, and that's how we're going

12   to proceed.

13             What else can we say about authorizations?

14   Anybody?  Okay.

15             We are talking about having a status conference

16   on January 13.

17             MR. VECCHIONE:  Hang on, your Honor.  There's one

18   other item before status conference.  This is John

19   Vecchione again.

20             THE COURT:  Yes, sir.

21             MR. VECCHIONE:  I have -- and Mr. Germany is on

22   the line.  I have had some confusion here.  I'm local

23   counsel for Mr. Germany on many of his cases, not all of

24   them.  They came over here severed from the MDL in

25   Tennessee, and my question is this:

```
 1              Does Mr. Germany need a pro hoc vice even though
 2   he's admitted in the MDL in Tennessee where they came from
 3   or can he simply make an appearance in this MDL, and does
 4   anyone have an objection to it?  That's really what that
 5   little item is on the last part of my item tree.
 6              THE COURT:  Oh, oh.
 7              MR. HUSTON:  John, this is Jim Huston.  If it's
 8   properly transferred to the MDL, he does not need a pro
 9   hoc.
10              MR. VECCHIONE:  That was my feeling.  I just
11   wanted to make sure that I said it on the record and that
12   nobody had any problem with it.
13              MR. HUSTON:  No, that's no problem with us.
14              THE COURT:  I can't imagine it would be a problem
15   for us, but if the Clerk's Office has any difficulty taking
16   a filing from him or adding him to the ECF notification
17   list, let me know and we'll work it out.
18              MR. VECCHIONE:  Thank you, your Honor.
19              MR. GERMANY:  Thank you, Judge.
20              THE COURT:  Now, I'm more than happy to make time
21   for you in mid January.  I actually have a bench trial
22   scheduled on the 13th, but it seems like it's only a short
23   time away and it's on the eve of the defendants filing
24   their pre-motion conference application.
25              What do you anticipate we would be discussing at
```

1  that juncture, Mr. Huston?

2        MR. HUSTON:  I think probably what needs to be

3  discussed at that point is how we're going to do the

4  pleadings.  We expect, as I indicated earlier, two types of

5  motions:  One is if there is lack of clarity on product

6  identification, we will bring motions based on Iqbal and

7  Twombly for insufficient specificity in the allegations,

8  which we can do either all at once or individually on

9  separate motions.  I think one motion would make more

10  sense.

11        THE COURT:  Absolutely.

12        MR. HUSTON:  And then secondly we're going to

13  have to address the surviving cases individually, both on

14  statute of limitations and on the local law that will apply

15  to each case as to whether they can even bring the action.

16  So we will know what we're dealing with after the seventh,

17  so we can propose to the Court how we think it ought to go

18  and we can do that in person at a status conference.  We

19  have no problem to sort of make up a plan and propose it at

20  that date.

21        THE COURT:  Does anybody disagree?

22        MR. HUSTON:  I can't hear you, Judge.

23        THE COURT:  I said:  Does anybody disagree?

24        MR. OSBORN:  This is Dan Osborn.  I guess I'm

25  just having trouble understanding what the difference would

 1   be between that conference and the submission to the

 2   magistrate judge.

 3          THE COURT:  You mean to the district judge, Judge

 4   Matsumoto.

 5          MR. OSBORN:  I'm sorry, yes.

 6          THE COURT:  Yes.  I kind of have to agree with

 7   that, Mr. Huston.  Why wouldn't you just lay out what it is

 8   you propose in your pre-motion conference application?

 9          MR. HUSTON:  We could.  But as I understand the

10   pre-motion conference application by letter, you are to

11   tell the judge the motions that you plan on bringing.

12   There isn't much of a discussion on which the Court would

13   prefer, whether they prefer it being done once or one set

14   of massive pleadings, or how it would be preferred.

15          THE COURT:  Well, I think Judge Matsumoto is the

16   one to make that call, since she's the one who is going to

17   receive the motion.

18          MR. HUSTON:  Certainly.

19          THE COURT:  My understanding of the practice

20   would be that she would receive your letter and then she'd

21   receive a responsive letter from the plaintiffs, and then

22   she'd bring everybody in to have the conversation you're

23   describing.

24          MR. HUSTON:  Okay, that's fine.  We can lay out

25   the options in those letters without any problem.

1        THE COURT:  I think so.  And I suspect if you

2  asked her, she may have a page limit on her pre-motion

3  conference applications that might not be appropriate for a

4  case like this, and I'm pretty confident that if you

5  requested to exceed her page limit, if she has one, that

6  she'll understand that this isn't a garden-variety

7  litigation and afford you the opportunity to be more

8  expansive.

9        MR. HUSTON:  That's what we'll do.  And I think

10  we can probably deal with a lot of it conceptually,

11  your Honor, at least in the initial stage.

12        THE COURT:  So I'm more inclined then -- well,

13  let me ask you this:

14        I assume after you review the complaints -- I may

15  be wrong -- that there is going to be some body of

16  plaintiffs that will survive that scrutiny and that you

17  won't be make a Rule 12 motion against; is that too

18  optimistic?

19        Well, maybe you don't want to take a position on

20  that now.  Here's what I do propose:

21        if on your review of the complaints the

22  defendants decide that there are some plaintiffs with

23  respect to whom they will not be moving to dismiss, you

24  should write to me instead of Judge Matsumoto about them,

25  so we can figure out whether or not discovery against the

1    defendants should proceed, given that some plaintiffs at

2    least are going to survive Rule 12.

3              Doesn't that make sense?

4              MR. HUSTON:  Yes, your Honor.

5              THE COURT:  All right.  At the same time you file

6    your pre-motion conference application to Judge Matsumoto,

7    you'll be sending me a letter either saying that you're

8    moving with respect to all of the plaintiffs, and,

9    therefore, it's your position -- and telling me what you

10   think about whether discovery should proceed or not, or

11   you'll be telling me that you're only moving against some

12   of the plaintiffs and proposing what you think discovery

13   should look like.  All right?

14             MR. HUSTON:  Yes, sir.

15             THE COURT:  Does anybody have anything they want

16   to add?

17             Well, Happy New Year to all of you.  Enjoy the

18   holidays.  It's been my pleasure to speak with you today.

19             We've been on the record.  If you want the

20   minutes of today's proceeding, you may call my clerk,

21   Ben Wellikson, at 718-613-2563 for further information.

22             Have a great day.

23                      * * * * * * * *

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18         I certify that the foregoing is a correct transcript

19    from the electronic sound recording of the proceedings in

20    the above-entitled matter.

21

22

23

24

25    ELIZABETH BARRON                     December 28, 2010