```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2

 3    ------------------------------------X
                                         :
 4    IN RE:                             :   09-MD-02120
                                         :
 5      PAMIDRONATE PRODUCTS LIABILITY   :   225 Cadman Plaza East
          LITIGATION,                    :   Brooklyn, New York
 6                                       :
                                         :   February 2, 2011
 7    ------------------------------------X

 8
               TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONIC HEARING
 9               BEFORE THE HONORABLE KIYO A. MATSUMOTO
                      UNITED STATES DISTRICT JUDGE
10

11    APPEARANCES:

12    For Pamidronate Products    DANIEL ADAM OSBORN, ESQ.
        Liability Litigation:     Osborn Law, P.C.
13                                295 Madison Avenue - 39th Floor
                                  New York, New York  10017
14

15    For Evan Chandler:          JOHN JULIAN VECCHIONE, ESQ.
                                  RON MELLOT, ESQ.
16                                Valad and Vecchione
                                  3863 Plaza Drive
17                                Fairfax, Virginia  22030

18
      For Plaintiffs:             ROBERT G. GERMANY, ESQ.
19                                Stripling McMichael &
                                    Stripling PA - Gainsville Fl.
20                                102 Northwest Second Avenue
                                  PO Box 1287
21                                Gainesville, Florida  32602

22    For Ben Venue               ERIC HUDSON, ESQ.
        Laboratories:             Butler Snow O'Mara Stevens &
23                                  Cannada, PLLC
                                  6075 Poplar Avenue - 5th Floor
24                                Memphis, Tennessee 38119

25                                (Appearances continue on next page.)


      Proceedings recorded by electronic sound recording, transcript
      produced by transcription service
```

```
 1

 2

 3    APPEARANCES CONTINUED:

 4    For APP Pharmaceuticals:    ERIN BOSMAN, ESQ.
                                  Morrison & Foerster
 5                                12531 High Bluff Drive
                                  Suite 100
 6                                San Diego, California  92130

 7    For Hospira:               CHRISTINA L. GAARDER, ESQ.
                                  Venable, LLP
 8                                750 East Pratt Street - Suite 900
                                  Baltimore, Maryland  21202

 9

10    For Teva Parenteral         NILDA MARIA TULLA-ISIDRO, ESQ.
        Medicines, Inc.:          Goodwin Procter LLP
11                                The New York Times Building
                                  620 Eighth Avenue
12                                New York, New York  10018

13    For Sandoz, Inc.:           THEODORE M. LIS, ESQ.
                                  STEPHEN KLEIN, ESQ.
14

15

16    Court Transcriber:          RUTH ANN HAGER
                                  TypeWrite Word Processing Service
17                                211 N. Milton Road
                                  Saratoga Springs, New York  12866
18

19

20

21

22

23

24

25
```

3

1    (Proceedings began at 3:09 p.m.)

2              THE COURT:  Hello.  This is Judge Matsumoto.

3              MR. OSBORN:  Good afternoon, Judge.

4              THE COURT:  All right.  Let me just call the case.

5    This is the Pamidronate Products Liability Litigation, 09-MD-

6    02120.  And let me first get the appearances, if I may, of the

7    plaintiffs' counsel on the line.

8              MR. OSBORN:  Good afternoon, Judge.  Dan -- I'm

9    sorry, John.

10             MR. VECCHIONE:  Go right ahead, Dan.

11             MS. OSBORN:  Daniel Osborn.

12             THE COURT:  All right.  Thank you.  Who else?

13             MR. VECCHIONE:  John Vecchione and with me from a

14   different location in case I'm dropped is my associate Ron

15   Mellot.

16             THE COURT:  I'm sorry.  What is the name?

17             MR. VECCHIONE:  Ron Mellot, M-E-L-L-O-T.  He's also

18   on the line.

19             THE COURT:  All right.  Thank you.  Good afternoon.

20   Is there anyone else for the plaintiffs?

21             MR. GERMANY:  Yes, Judge.  Robert Germany.

22             THE COURT:  All right.  Thank you.  Anyone else?

23   Stripling?  No?

24             MR. GERMANY:  Mr. Stripling is in the cases with me,

25   Your Honor.

4

1          THE COURT:  All right.  Okay.  Thank you.  Let's

2  just next find out who among the defense counsel are here.

3  Start -- I'm just going to call the name of the defendant if

4  you could bear with me for one minute.

5          Ben Venue Labs.

6          MR. HUDSON:  Eric Hudson.

7          THE COURT:  Okay.  Thank you.

8          Novartis?  Oh, they're gone.

9          Okay.  APP Pharmaceuticals?

10          MS. BOSMAN:  Erin Bosman.

11          THE COURT:  Thank you.  And what about Hospira.

12          MS. GAARDER:  Christina Gaarder.

13          THE COURT:  Thank you.  Teva.

14          MS. TULLA-ISIDRO:  Nilda Tulla.

15          THE COURT:  All right.  Thank you.  And Bedford.

16          MR. HUDSON:  Eric Hudson.

17          THE COURT:  Oh, thank you.  I'm sorry.  And let's

18  see.  APP Pharmaceuticals.  We've gotten them.  Okay.

19          Sandoz.

20          MR. LIS:  Yes, Your Honor.  Ted Lis and Stephen

21  Klein.

22          THE COURT:  Stephen Klein.  I don't think Mr. Klein

23  has yet appeared in this case but I'll note his appearance and

24  ask that he enter an appearance on the docket in this case.

25  Stephen with a V or a P-H?

5

1     MR. KLEIN:  Your Honor, it's with a P-H.

2     THE COURT:  Okay.  Thank you.  K --

3     MR. KLEIN:  K-L-E-I-N.

4     THE COURT:  Thank you.  Is there anyone who I

5 overlooked?  All right.

6     I have -- we scheduled this conference at the

7 request of the defendants who signed a letter dated January

8 21st asking for leave to file motions pursuant to Rule

9 12(b)(6) for failure to meet the minimum pleading requirements

10 under 8(a); and, further, to dismiss for failure to comply

11 with Judge Gold's orders that authorizations be provided by

12 January 7th and also to set up possible briefing for other

13 issues relating to each of the various claims.  And I also

14 have read a letter dated January 26th from plaintiff's

15 counsel, Mr. Osborn, who proposes a meeting with the parties

16 to try to narrow and reduce, if possible, the number of

17 motions.  Is that something the parties have discussed any

18 further or is there a willingness by the parties to do that?

19     MS. BOSMAN:  Your Honor, this is Erin Bosman for APP

20 Pharmaceuticals.  The defense group has discussed this.  We

21 are not open to meeting and conferring further on this issue.

22 It is our position that the plaintiffs have had a year since

23 our last meeting with you to conduct product ID discovery and

24 to narrow down their claim to naming the proper defendants so

25 we see no further reason to meet and confer at this point.

6

1          THE COURT:  All right.  Well, then let me just ask

2    about the issue of the serial motions that are possibly being

3    proposed.  I think that the amended pleadings seem to reflect

4    that we have 15 different, if not more, states of residence of

5    the various plaintiffs and possibly -- I don't know if this is

6    an issue -- did all of the plaintiffs receive treatment in

7    their home states of residence or not?

8          MR. OSBORN:  This is --

9          MR. VECCHIONE:  This is John Vecchione.  Most of

10   them did but some did not and some of them are on border

11   states on one side of the line and the other.

12         THE COURT:  Have you provided the information to the

13   defendants as to which plaintiffs reside in one state but

14   receive treatment in another state?

15         MR. VECCHIONE:  I believe I have by letter but if I

16   have not I'm happy to clarify that.

17         MS. BOSMAN:  Your Honor, this is Erin Bosman.  We do

18   not have that information for the majority of the plaintiffs.

19   And, for instance, the Irrigon [Ph.] amended complaint there

20   is simply a chart that lists a state.  It does not tell us

21   residence or -- residence at the time of treatment, where the

22   treatment was or if this is where they're currently residing.

23         THE COURT:  Yeah.  I note that it just says

24   "states."  So states for what purpose?

25         MR. OSBORN:  Well, Your Honor, this is Mr. Osborn.

1   Two things.  One is I don't quite understand why the

2   defendants don't want to meet.  I think there are benefits

3   that could be derived and there are efficiencies that could be

4   achieved that would certainly cut down on the number of

5   motions.  And when they say that we've had a year to conduct

6   discovery that's not quite accurate because it's really been

7   what we could find in our own.  It's almost like prelitigation

8   work that we've been doing, investigations because the

9   defendants have not had to produce really anything.  So we've

10  been a little bit handicapped and I still think that there's

11  value to having a meeting because we have produced to the

12  defendants tens of thousands of pages of medical records that

13  we, the plaintiffs, have subpoenaed.

14          We have identified in a number of instances the

15  specific manufacturer that goes to a specific plaintiff so I

16  think the representation in their letter was not quite

17  accurate.  But to the point that was just raised by Ms.

18  Bosman, we were told by Judge Gold to identify the ven -- the

19  state I think or the venue whatever it was for these

20  plaintiffs to resolve issues of state law.  It wasn't so that

21  the defendants could know exactly what courthouse they might

22  have to defend one of these cases in.  We weren't told to

23  identify the exact place they took it, the exact dates they

24  took it.  We've never done that in any of our complaints --

25          THE COURT:  Well, if the --

8

1          MR. OSBORN:  -- so --

2          THE COURT:  Okay.  But this is my concern.  I don't

3   know whether under these numerous state laws the issues would

4   be determined by the place where the action arose, which might

5   be in the place of treatment or whether it arose -- whether we

6   should be applying the law of the state in which the plaintiff

7   resides and --

8          MR. OSBORN:  I think, Your Honor, that joint --

9          THE COURT:  What is that last column?  Is it a

10  residential column or is it a treatment column?

11         MR. OSBORN:  It's a residence column.  It's talking

12  about Schedule B to the Irrigon complaint, Your Honor.  And I

13  would join Mr. Vecchione in offering, too, we will provide --

14  if the residency differs from the place of infusion we'll

15  provide that information in joint order to the defendants.

16  That's not a problem.

17         MS. BOSMAN:  Your Honor, this is Erin Bosman.  I

18  would just like to respond to a few of Mr. Osborn's comments.

19  He is stating that they have been handicapped, the plaintiff

20  has and that they have had to go through what he makes it

21  sound as if it was an extraordinary procedure to get this

22  identification.  What the point is and what defendants have

23  been stating for the last year, this is the plaintiff's burden

24  and the plaintiff's obligation to bring a complaint that is

25  properly pled.  They need to identify the proper manufacture.

1  That is not our burden.  The defendants don't need to do

2  anything in this process.  The fact that all of these medical

3  records have been provided does not then switch the burden to

4  the defendants to look through and to tell the plaintiff who

5  is the proper manufacturer for each of their individual

6  plaintiffs so that they can properly plead their complaints.

7  That's the problem here.  The decision has --

8          MR. OSBORN:  Your Honor, we've never --

9          MS. BOSMAN:  -- actually produced -- just a

10  second --

11          MR. OSBORN:  We've never asked for that to be done.

12          MS. BOSMAN:  The defendants have --

13          THE COURT:  Please don't --

14          MS. BOSMAN:  -- produced discovery that was

15  requested and that Judge Gold asked us to produce and we have

16  done so, but what this comes down to is the failure to state a

17  claim as the complaints are currently pled.

18          MR. OSBORN:  Your Honor, if I could -- this is Mr.

19  Osborn.  Just to advance the ball a little bit, I read their

20  letter a little bit differently which was they want to move on

21  12(b)(6) now as to all of them and that's fine.  I've never

22  participated in one of these conferences where the parties

23  weren't allowed to make the motion so I'm assuming they'll be

24  able to make that 12(b)(6) motion, but I did read their letter

25  to say let's do that first and then let's look at these other

1  potential motions and that might help us a little bit in terms

2  of today's conference.  Maybe I'm reading the letter wrong.

3          MS. BOSMAN:  That is correct.  We were -- how the

4  defendant had proposed this was that we would first move

5  simply on the <u>Iqbal</u> and failure to properly plead the cause of

6  action and to deal with those because the thought being from

7  the defendants that it might make it really easier for the

8  Court and for the plaintiffs to manage because if that is

9  going to get rid of a number of these it reduces the number of

10 choice of law issues that we would have to deal with because

11 then when we get into the other grounds for motions to dismiss

12 statute of limitations, issues with breach of warranty and

13 things like that, again it comes into play on where the

14 treatment was provided, where the residence is, and looking at

15 the choice of law.

16         THE COURT:  All right.  Now, in terms of any market

17 share states are we -- how do you propose addressing that?  In

18 the context --

19         MS. BOSMAN:  Your Honor --

20         THE COURT:  -- in the context of the Rule 12(b)(6)

21 motions.

22         MS. BOSMAN:  The -- I do understand that in the

23 plaintiff's letter to the Court they state that they have pled

24 market share liability.  We have not seen in any of the

25 amended complaints where market share allegations have been

11

1  made.

2          MR. GERMANY:  They're in all four of mine.  This is

3  Bob Germany.

4          MS. BOSMAN:  Could you direct us to the paragraph

5  where we could find that?

6          MR. GERMANY:  Sure.  I don't have it right here in

7  front of me but I'll be happy to have them pull it and I can

8  tell you.

9          THE COURT:  I don't know if -- well, there's a

10 paragraph 41.  I don't know if that it, but listen, folks.

11 The last thing in the world we want is multiple, multiple

12 motions that are going to force the Court to go digging

13 through the pleadings to figure out where some little nugget

14 of fact might exist.  I would hope that the defendants would

15 be willing to at least try to talk about which plaintiffs'

16 claims might be dismissed because I remember very clearly over

17 a year ago meeting with the parties with Judge Gold and

18 plaintiff's counsel repeatedly assuring the Court and defense

19 counsel that if after due diligence they could not identify a

20 particular manufacturer they were willing to cut loose and

21 dismiss certain of their claims.  And if that's the purpose of

22 your meeting I don't even know if you need a meeting for that,

23 but why not just take care of it and dismiss those claims?  Is

24 that something that --

25          MR. VECCHIONE:  Your Honor --

1           THE COURT:  Is that something the plaintiffs'

2    counsel was willing to do or contemplated?

3           MR. VECCHIONE:  This is John Vecchione and I believe

4    I made the statement that if I -- I was happy to drop cases

5    and I believe I said market share liability was my last

6    resort.  Well, for some of my complaints I've identified the

7    manufacturer and I have dropped the people who I know didn't

8    do it.  For others I have not that and I have pled market

9    share in the complaint because it's a valid -- in my view it's

10   a valid claim under those state laws.  And if they don't have

11   it then I haven't pled it and I've offered to drop two of the

12   plaintiffs.

13          So I did not -- since I'm the one who made that

14   statement I said it was my last resort.  I've said that again

15   and again but sometimes you have to take your last resort.

16   And I believe I also have pled market share where I did not

17   have the -- I've not been able to identify the manufacturer

18   but that the -- there are state law -- state law doesn't

19   prohibit it.

20          THE COURT:  All right.  So how -- I guess from a

21   question to the defense counsel, then.  Does it make sense to

22   proceed as you propose to just address the sufficiency of the

23   pleadings under <u>Iqbal</u> and not to address those complaints

24   where market share is pled?  I know the defense counsel do not

25   agree that the plaintiffs have pled market share, but they're

13

1   telling me they have and they're going to identify for all of

2   us where those allegations exist in their complaints.  But it

3   does seem to me that to the extent certain complaints or

4   plaintiffs may have pled the alternative market share then it

5   doesn't -- it makes it difficult or maybe pointless and a

6   waste of everyone's time to do -- engage in motion practice

7   solely on the sufficiency issue.

8          MS. BOSMAN:  Correct, Your Honor.  I think that the

9   defense counsel -- I speak right now for APP, but I believe

10  that we are all on board with that.  I think that from our

11  review, again, we do not find that they pled market share

12  liability.  If they did, we would agree that it does not make

13  sense to move on an <u>Iqbal</u> standard for that.

14         However, I think at this point we would propose to

15  move forward on <u>Iqbal</u> for each of the amended complaints

16  unless, of course, the plaintiffs do point out for us where

17  the market share liability allegations are.  If there are

18  complaints that have those and it would no longer be subject

19  to the 12(b)(6) under <u>Iqbal</u>, I think it would make sense to

20  hold onto those and then to deal with that when we deal with

21  the other motions to dismiss that we'll deal with, statute of

22  limitations issues.  That way for the Court we can do the --

23  how we would see it is in two motions, two groups of motions

24  so that you're not flooded with all of them at one point.

25         THE COURT:  All right.  May I just discuss this

14

1    rule -- proposed Rule 41 basis for dismissal, that is failure

2    to comply with court orders and to prosecute?  I'm sure you're

3    familiar with the law in the Second Circuit but it has to be a

4    little bit more than -- I mean, I shouldn't say even "a little

5    bit more."  It's got to be quite a bit more than define one

6    discovery order to do something.

7            Now, if you can establish that the Judge entered

8    multiple orders -- and I actually do remember this from the

9    first meeting, so I'm a little shocked to hear it hasn't been

10   done, but the first meeting that I met -- where I sat with

11   Judge Gold it was very clear that there was an understanding

12   that the plaintiffs would provide authorizations, HIPAA

13   compliant authorizations to -- for every plaintiff and that

14   that would be done forthwith and it's without delay.  I don't

15   know how many subsequent orders Judge Gold entered to that

16   effect, but I don't know that dismissal -- if it was that one

17   situation, but I think it is probably more than one -- the

18   first conference and then the January -- I'm sorry, it was the

19   December order I think where he most recently ordered again

20   the authorizations -- that still may not be enough under the

21   Second Circuit to actually dismiss a case under Rule 41 unless

22   there was a warning to the plaintiff that if you don't do it

23   by January 7th and this is your last opportunity you may be

24   submit to a dismissal under Rule 41.  Was that done?

25           MR. VECCHIONE:  Your Honor, this is John Vecchione.

1   First, I think I've provided my relief with excepting the one

2   case where I'm substituting and I think I've said in my

3   pleadings why that was.  Whether they have dates -- the

4   only -- they were all provided but then at the last conference

5   there was a question of whether they had dates on them and I

6   had a -- of course, I said on the line if there was any

7   problems with mine please call me.  I have not gotten any

8   calls so there's -- there's even a more -- there's a factual

9   issue here.

10          And the other thing is I have said that I will

11  stipulate that they can strike any dates they find on any of

12  the releases I've provided, so I believe that that's a tempest

13  in the teapot for most of these.

14          MR. OSBORN:  Your Honor, this is Mr. Osborn.  Since

15  the January 2010 time frame the plaintiffs have provided

16  hundreds of authorizations so we have made every effort to

17  comply.  I think Mr. Vecchione is correct.  There's sort of

18  two issues.  One is there may be a handful that are

19  outstanding and we have asked the defendants to identify those

20  plaintiffs for whom they believe authorizations are

21  outstanding.

22          I don't have any complaints currently or any names

23  for whom I've been given that information, but Mr. Vecchione

24  is right.  There's an issue about the form of the

25  authorizations.  I've been working with Ms. Gaarder to try and

16

1   resolve that as to whether the authorizations when they are

2   provided are to be undated and blank in terms of the facility.

3   And we got a little bit hung up on that but I think that's

4   something that the parties can work out.  I don't quite

5   understand all the smoke about the authorizations either as

6   Mr. Vecchione just described.  I thought we were pretty well

7   done with all of that.

8           THE COURT:  Well, look.  Hopefully everyone is going

9   to be mindful of the Rule 11 and will not submit something for

10  my decision if there's not a factual basis for it, but I

11  just -- I think that at least we can agree that these are

12  quite a bit later than the Court and the parties might have

13  anticipated back at the first conference.  And you may have

14  well provided them recently and they may not comply to the

15  letter with Judge Gold's order dated September 17th of 2010

16  directing that they be undated, but hopefully -- I mean, the

17  plaintiffs ought to know which of the authorizations they have

18  provided comply and don't comply with the letter and spirit of

19  the order.

20          I'm just saying that it's a very tough basis to get

21  a dismissal so I'm just trying to save perhaps briefing on

22  that issue unless, you know, you feel that you have really met

23  the repeated -- the plaintiffs have met the repeated failures

24  to comply with court orders to do an act by date certain.

25          In any event, the defendants had proposed a briefing

17

1  schedule to start 45 days after this conference which seems

2  fine to me.  If anyone has any -- and you will -- the

3  defendants will determine which complaints allege market share

4  and which don't.  And maybe before you start your briefing you

5  might want to just get information from each of the

6  plaintiffs' counsel who insist that they have, in fact, pled

7  it and look at their -- the paragraphs they cite and decide

8  whether or not it's sufficient.  So --

9          MS. BOSMAN:  We will do that, Your Honor.

10          THE COURT:  All right.  The other thing I would like

11  to encourage the parties to do if there is a way to do it

12  could you coordinate your briefing or how do the defendants

13  envision their motions?  Did they -- was it each lawyer was

14  going to brief on behalf of their own client or was there

15  going to be coordinated briefing or what was --

16          MS. BOSMAN:  Your Honor, the defendants are willing,

17  I believe, to coordinate and to -- it is something where I

18  think we can file it as one joint motion.

19          THE COURT:  Okay.  Great.

20          MR. VECCHIONE:  And, Your Honor, on that subject --

21  this is John Vecchione again -- I filed all my complaint -- I

22  moved to December, which was unopposed and they were severed,

23  and then I amended my complaints and expected to be able to

24  put them in a different -- under a different number.  That

25  hadn't been -- although there was severance there was no

18

1   electronic way to do that.  And I guess I have to call the

2   clerk's office and figure out how to get a separate number

3   because it's severed but when you electronically file it, it's

4   still in the same place.  So I will call the clerk's office

5   and see how to fix it.  I've never run into this problem

6   before but I just wanted all litigants to hear why I did it

7   that way.

8           THE COURT:  All right.  Yes, they should be able to

9   assist you.

10          MS. BOSMAN:  Your Honor, a procedural rule.  I know

11  that your chamber rules say that motions are not to be filed

12  until they are fully briefed.  Does that mean you would like

13  us to wait until -- just to exchange our motion with the

14  plaintiff?

15          THE COURT:  That's generally --

16          MS. BOSMAN:  Wait till we have all of it?

17          THE COURT:  Yeah.  That's generally how it works.  I

18  mean, it does -- it's not to say that you can't -- cannot

19  serve your two courtesy copies on us as you serve the

20  plaintiffs.

21          MS. BOSMAN:  Okay.

22          THE COURT:  But -- and that might be a good idea

23  just because we'll start accumulating the moving papers but it

24  does not get filed by ECF until the reply and then everything

25  should be filed together.

1          So 45 days you can confirm in a letter what those

2    dates are.  I think that those -- that seems like a fine time

3    frame unless the plaintiffs tell me differently.

4          MR. OSBORN:  Your Honor, Mr. Osborn again.  Are we

5    dispensing with the idea of maybe meeting to narrow the number

6    of plaintiffs or --

7          THE COURT:  Well, if you want --

8          MR. OSBORN:  If we sent in --

9          THE COURT:  If you want to dismiss claims and

10   dismiss, you know, take certain plaintiffs out of the cases

11   you can do that without a meeting, can't you?

12         MR. OSBORN:  There's --

13         THE COURT:  I'm just worried about --

14         MR. OSBORN:  Your Honor, yeah, but there's --

15         THE COURT:  I'm just worried about the cost.

16         MR. OSBORN:  Yeah.  I'm sorry.  I think I spoke over

17   you, Judge.

18         THE COURT:  No.  I'm sorry.  I'm just worried about

19   the cost associated with, you know, dragging everyone to a

20   meeting when you can pretty much --

21         MR. OSBORN:  No --

22         THE COURT:  -- determine which ones you -- which

23   plaintiffs you can cut loose and just --

24         MR. OSBORN:  Well, the flip side to that is, Your

25   Honor, that there are plaintiffs for whom on our Schedule B

20

1   we've identified the specific manufacturers.  And I guess the

2   defendants don't believe us so they're going to move as to

3   certain people that we've identified the manufacturer to by

4   IDC number as to who provided the drug to our client.  So I

5   was hoping that we could work both sides which is we would

6   dismiss those and they would acknowledge that there are some

7   who have adequately pled product identification.

8           MS. BOSMAN:  Your Honor, this is Erin Bosman.  I

9   think I can speak for the defendants and say that we would be

10  willing to have a conference call with the plaintiffs to

11  discuss these issues, to also discuss which complaints they

12  believe allege market share liability.  Clearly we do not want

13  to have to bring a motion and go through the motion practice

14  for those where it is not needed.  I would propose that we

15  would then send a letter to you to let you know that the 45

16  days could start after we do that conference call.

17          THE COURT:  That's fine.

18          MS. BOSMAN:  And that we would then state if we came

19  to an agreement that there were not -- we were not going to

20  move on the Iqbal bases for certain plaintiffs, that we would

21  put that in the letter and that we would be deferred from

22  having to move, though, on other grounds for those plaintiffs

23  until we get through the Iqbal for the rest of the plaintiffs

24  so we don't have two different briefings going at the exact

25  same time.  That way we can narrow it down if possible and we

21

1   can agree to defer those until this briefing is complete on

2   Iqbal.

3           THE COURT:  Are the plaintiffs willing -- I mean,

4   that sounds reasonable to me.  Do the plaintiffs' counsel

5   agree?

6           MR. OSBORN:  Sure.  This is Mr. Osborn, sure.

7           MR. GERMANY:  No problem from Germany.

8           THE COURT:  All right.

9           MR. VECCHIONE:  Nor I, Your Honor.

10          THE COURT:  All right.  So all plaintiffs counsel

11  are in agreement.

12          Okay.  So should we set just a rough date then for

13  the parties to have their conference call or calls and then

14  write us that letter that Ms. Bosman proposes?  How much time

15  do you think, 30 days from now?

16          MS. BOSMAN:  That would be fine, Your Honor.

17          THE COURT:  All right.  So this would be a jointly

18  submitted letter on or about March 3rd regarding the outcome

19  of these conferences and what will be briefed and an agreement

20  that defendants will not, you know, lose any right to move on

21  other grounds.  All right.  Well, I appreciate your efforts to

22  try to get as much of this narrowed as you can.  I do think

23  that the case does have to move forward so I think we have a

24  plan to then advance those motions within 45 days of March

25  3rd.

22

1          MS. BOSMAN:  Thank you, Your Honor.

2          THE COURT:  Okay.  All right.  Thank you all.

3          MR. OSBORN:  -- Judge.

4          THE COURT:  Yes.  Is everything all right?  Okay.

5  Good.

6          MS. BOSMAN:  Thank you, Your Honor.

7          THE COURT:  Thanks.  Have a good day.

8          ATTORNEYS:  Thank you.

9          (Proceedings concluded at 3:36 p.m.)

10                    *  *  *  *  *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

23

1          I certify that the foregoing is a court transcript

2    from an electronic sound recording of the proceedings in the

3    above-entitled matter.

4

5

6    _____

7                                    Ruth Ann Hager

8    Dated:  February 4, 2011

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25